UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN CARTER HOLTZER,

    Petitioner,

v.                                                              Case No. 2:06-cv-169
                                                                  HON. R. ALLAN EDGAR

BARRY DAVIS,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Kevin Carter Holtzer filed this petition for writ of habeas corpus challenging the validity of his state court conviction for first degree murder. Petitioner was convicted after a jury trial and on November 16, 1999, was sentenced to life imprisonment. Petitioner's appeal was denied by the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. Petitioner then presented the issues raised in this petition in a motion for relief from judgment. The motion for relief from judgment was denied by the trial court on March 22, 2005. Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal because petitioner failed to demonstrate entitlement to relief under MCR 6.508(D). Respondent argues that petitioner has procedurally defaulted the issues presented in this petition.

        The Michigan Court of Appeals summarized the facts:

> Defendant was convicted of brutally murdering eighteen-year-old Kaylee Bruce at the Beach Condominiums in Traverse City, where she worked as a desk clerk and defendant was a monthly rental. Her body was found by the maintenance supervisor on the morning of February 17, 1998. She had suffered nineteen lacerations that extended to the bone, multiple facial and skull fractures, severe neck

injuries consistent with strangulation, severe blunt force injuries to the torso, chest, abdomen and pelvis, and extensive internal bleeding. Additionally, a metal rod had been forced into the decedent's vagina with such force that it lacerated her vagina and penetrated two inches into her pelvic bone. It was opined that it had been necessary to drive the rod with a mallet or kick it multiple times with a sturdy shoe to drive it into the bone. The decedent was still alive when this injury was inflicted. Additionally, the blood on her breasts had been smeared as if someone had stroked her breasts. Additionally, money was missing from the office where the decedent worked.

There was a series of bloody footprints at the scene, all made from the same type of footwear, a pair of size 12 or 12-1/2 Caterpillar work boots. These boots were similar in style to a pair that defendant had recently owned; defendant's boots were not found, however, and no comparison was able to be made. Defendant was seen wearing the boots before February 14, but wore different, new boots to work on February 17. Additionally, a tire valve core was found near the decedent's body; defendant worked at a Tire Factory store owned by his father. There was evidence that it was common for tire valve cores to become caught in the tread of Caterpillar boots worn by store employees.

Defendant moved out of the Beach Condominiums about a week after the murder and did not report to work as scheduled on February 26. He did return to work about two weeks later. However, in March 1998, defendant purchased an Amtrak ticket in Toledo under a false name, for passage to Carbondale, Indiana, with a changeover in Chicago. Defendant was taken into custody by the FBI in Chicago.

Defendant's felony-murder conviction was based upon the predicate felonies of third-degree criminal sexual conduct and second-degree criminal sexual conduct. A third theory of felony murder based upon a predicate felony of larceny was rejected by the jury.

In addition to the evidence set out above, the prosecutor introduced evidence based on mitochondrial DNA (mtDNA) from hairs found at the crime scene and in defendant's bedroom. The admissibility of this evidence forms most of defendant's arguments on appeal. At issue is mtDNA testing on three hairs. Two hairs subsequently determined to belong to defendant were found at the crime scene and are referred to as the "pubic hair" and the "torso hair." Additionally, a hair identified as belonging to the victim was found in defendant's bedroom and is referred to as the "bedroom hair."

Petitioner maintains that his conviction was obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his petition:

I. Ineffective assistance of counsel,

II. Prosecutorial misconduct,

III. A violation of due process when scientifically unsound luminol testing was introduced as evidence,

IV. Ineffective assistance of appellate counsel, and

V. The court should not apply 28 U.S.C. § 2254(d)(1), if it precludes relief, because that standard is unconstitutional.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is

contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court.

*See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

When a state-law default prevents further state consideration of a federal issue, the federal courts are ordinarily precluded from considering that issue on habeas corpus review. *See Ylst v. Nunemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). The Sixth Circuit applies a four-part test to determine whether a claim is procedurally defaulted: (1) the court must first determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the state procedural rule; (3) the default must be an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) if the foregoing are met, the petitioner must demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001). There may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 122 S.Ct. 877, 878 ( 2002). A petitioner may also excuse a default by making a colorable claim of innocence; that is, he has shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). This exception is reserved

for a very narrow class of cases, based on a claim of "new reliable evidence." *Schlup*, 513 U.S. at 315, 324.

The trial court denied petitioner's motion for relief for judgment under MCR 6.508(D)(3) and concluded that there lacked good cause and/or prejudice to overcome the failure to raise the issues in the initial appeal. More importantly, the Michigan Court of Appeals and the Michigan Supreme Court expressly stated that it denied petitioner's motion for relief for judgment and application for leave to appeal on the basis that petitioner failed to "meet the burden of establishing entitlement to relief under MCR 6.508(D)." Under MCR 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised on direct appeal. For claims that could have been raised, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." MCR 6.508(D)(3)(a)-(b). In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1104, 1006-1007 (6th Cir. 2000). Because MCR 6.508(D) was enacted in 1989 and petitioner's conviction and appeals took place some time thereafter, MCR 6.508(D) was a "firmly established" procedural rule for purposes of petitioner's action. *See Luberda*, 211 F.3d at 1007; *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998).

As cause for his default, petitioner asserts that his appellate counsel should have raised the defaulted issues in an appeal of right. Petitioner argues that his trial counsel was

ineffective for failing to hire an additional expert witness to testify about hair transfer issues and luminol testing. Petitioner has presented a report from an expert that indicates that there was nothing about the hair evidence that could show that it came from either petitioner or the victim. Petitioner's expert also explains how hair generally can be transferred from location to location without any foul play involved. Further, petitioner's expert report states that luminol testing can indicate only the possibility that blood is present and would need confirmation by some additional testing. In fact, the expert report states: "[t]o have enough blood on shoes or feet to produce a stain which soaked through a rug or carpet, as described in the Laboratory Reports and accompanying notes seems entirely improbable." Petitioner argues that it was constitutional error not to present contrary expert testimony on the scientific analysis of the hair and blood evidence.

To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether the alleged failures of petitioner's trial counsel were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the

> wide range of reasonable professional assistance." *Id.* at 689.
> "Counsel is constitutionally ineffective only if performance below
> professional standards caused the defendant to lose what he otherwise
> would probably have won." *United States v. Morrow*, 977 F.2d 222,
> 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993).
> Thus, the determinative issue is not whether petitioner's counsel was
> ineffective but whether he was so thoroughly ineffective that defeat
> was "snatched from the jaws of victory." *See id.*

*West v. Seabold*, 73 F.3d 81,84 (6th Cir. 1996).

In the opinion of the undersigned, there was no constitutional error by deciding not to call additional experts to testify about hair transfer or luminol evidence. Testimony was brought out at trial that hundreds of hair samples were taken as evidence and most of those samples were dissimilar to either the victim's hair or petitioner's hair. Additional testimony about hair transference issues could have added little, if any, value to the defense. Similarly, even the prosecutor, when questioning witness Swander, brought out testimony that luminol evidence was not conclusive for blood and that other stains would result in a positive luminol test result. Witness Swander testified that luminol was a first test to determine the possibility of a blood stain. On cross examination, defense counsel brought out further testimony that luminol could not be denied for blood and would react to other substances. In fact, witness Swander could not testify that the positive luminol findings were blood stains without additional testing. Further, defense counsel brought out testimony that stains taken from blinds in petitioner's rented condominium that indicated a positive luminol test did not test positive for blood upon further laboratory testing. Defense counsel further discussed these issues in his closing statement to the jury.

Petitioner argues that there were repeated instances of prosecutorial misconduct. Ultimately, the issue for the Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982). *See also*

*United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action). Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989).

Petitioner argues that the prosecutor committed misconduct by stating that blood was found in petitioner's condominium unit and that footprints were found leading to petitioner's condominium unit. Certainly, it was the prosecution theory that blood was found in petitioner's condominium unit and that a pattern of blood was found that indicated footprints. It was the prosecution theory that the blood came from petitioner's boots which picked up the blood from the crime scene and transferred blood to the carpeting as petitioner returned to his unit after committing the crime. Defense counsel did a very good job of showing that the luminol testing could not conclusively indicate blood, but the testimony did establish that luminol could indicate the presence of blood. In fact, the prosecutor argued that blood was found in petitioner's condominium based upon luminol testing, which the prosecutor admitted was not conclusive. Defense counsel in his closing argument made similar arguments regarding the lack of conclusiveness of luminol testing for blood. Similarly, the prosecutor never stated with certainty that there existed a blood pattern of footsteps leading to petitioner's condominium unit, but simply argued the evidence supported such a conclusion.

Petitioner also argues that it was improper for the prosecutor to a make a statement that two pubic hairs found at the crime scene might have been from Darlene Wilson. Neither

petitioner nor the victim were the source of those hairs. No testing was done to indicate that the hairs came from Darlene Wilson. Darlene Wilson did testify that she and petitioner were intimate when he visited her just hours before the murder was believed to take place. The prosecutor suggested that it was simply a reasonable explanation that the hairs could have come from Darlene Wilson in his rebuttal closing argument. Petitioner also argues that the prosecutor improperly used petitioner's silence upon arrest and petitioner's failure to turn himself into police when he learned that he was wanted for murder as evidence of petitioner's guilt. The prosecutor did not commit misconduct on these issues. Contrary to petitioner's argument, the prosecutor did not improperly use petitioner's silence as evidence of guilt. The statement that petitioner "sat there quietly, didn't say anything, and basically showed no emotion," was made by a witness and was not responsive to the prosecutor's question. The prosecutor did not comment on petitioner's silence and did not commit misconduct on this issue. Further, the prosecutor's comment about petitioner's behavior was not misconduct.

Petitioner argues that testimony and evidence introduced regarding luminol testing violated his right to a fair trial by causing prejudice. Petitioner characterizes luminol testing as junk science and without evidentiary value. Certainly, the luminol testing was conducted as a first line test for blood. The testimony clearly indicated that it was only a first line test and that it was not a conclusive test for blood. The prosecutor simply argued that the positive luminol test results could have been blood. Contrary to petitioner's argument, the prosecutor never argued that the luminol testing conclusively established the presence of blood. The luminol testing was admitted for its value and that was simply as a first line test for possible blood presence. The fact that further testing was not conducted was admitted as evidence and defense counsel addressed the luminol evidence effectively on cross examination and in his closing argument.

Under the circumstances of this case, appellate counsel's decision not to raise these issues does not establish ineffective assistance of counsel. In the opinion of the undersigned, petitioner cannot establish cause or prejudice to excuse his procedural default of these issues.

Since this recommendation is based upon petitioner's procedural default of the issues presented in this petition, petitioner's assertion that 28 U.S.C. § 2254(d)(1) is unconstitutional has no relevance to this analysis. The recommendation would be the same even if 28 U.S.C. § 2254(d)(1) never existed.

Accordingly, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the

The undersigned recommends that the court deny petitioner's application on based upon his procedural default. Under *Slack*, 529 U.S. at 484, when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial

of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id.* The undersigned concludes that reasonable jurists could not debate that each of petitioner's claims are properly dismissed as defaulted . Petitioner has not established that his appellate counsel was ineffective for failing to bring issues of ineffective assistance of counsel, prosecutorial misconduct or improper admission of luminol evidence in the first appeal. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* The court also finds that reasonable jurists could not find it debatable that the Petitioner failed to present a valid claim of a denial of a constitutional right. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley  
    TIMOTHY P. GREELEY  
    UNITED STATES MAGISTRATE JUDGE

Dated: November 3, 2008